UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

FRANK AND CYNTHIA JULIAN,

    Plaintiff,

v.

SANTANDER CONSUMER USA, INC.

    Defendant.
_____

Case No. 1:12-CV-1199(MAD/TWD)

COMPLAINT
JURY TRIAL DEMANDED

Plaintiffs, Frank and Cynthia Julian, acting pursuant to Section 813(a) of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692*p,* as and for their Complaint allege as follows:

## JURISDICITON AND VENUE

1. This is an action arising under the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §§ 1692-1692*p*, to obtain monetary civil penalties, costs and attorney's fees for Defendant's violations of the FDCPA.

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1331, 1337(a), and 1355(a) and under 15 U.S.C. § 1692*k*. This action arises under 15 U.S.C. §§ 1692*e*.

3. Venue is proper in the United States District Court for the Northern District of New York under 28 U.S.C. §§ 1391(b)-(c) and § 1395(a).

## PLAINTIFF

4. This action is brought by Frank and Cynthia Julian (hereinafter "the Julians"). The Julians are natural persons who reside in the Village of Ravena, County of Albany, New York.

5. Both plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1692*a*(3).

1

**DEFENDANT**

6. The Defendant is Santander Consumer USA, Inc. (hereinafter "Santander"). Santander is a Delaware corporation doing business throughout the United States. Upon information and belief, Defendant does business in Texas and New York, among other states.

7. Santander acts as a debt collection agency on behalf of CitiFinancial Auto, Ltd. (hereinafter "CitiFinancial"). At all times relevant to this Complaint, Santander has transacted business in the Northern District of New York and throughout the United States.

8. Santander is a "debt collector" as defined by Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6) in that it regularly collects or attempts to collect debts owed or due another.

**PRELIMINARY STATEMENT**

9. The FDCPA is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties. See 15 U.S.C. § 1692 *et sec*. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692*k*. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and prescribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

10. In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person

in connection with the collection of a debt." 15 U.S.C. § 1692*d*. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692*e*. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692*f*. The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

11. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692*a*. Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. § 1692*b*.

12. Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692*e*.

## FACTUAL ALLEGATIONS

13. On or about August 17, 2005, the Julians entered into a contract for the financed sale of a 2003 Pontiac Montana vehicle for the total amount of $22,193.52. The loan was financed through CitiFinancial.

14. The financing agreement entered into provided that the Julians would pay the total amount due under the contract in seventy two installment payments in the amount of $459.82 each. Payments were due on the first of each month.

15. On the front of the contract, the language of the contract states: "**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of $15.00 or 5% of the part of the payment that is late, whichever is greater."

16. The Julians read this language and naturally assumed that there would be no penalty or consequence if they made their payments, in full by the tenth of each month. They proceeded to do just this. Each month they dutifully made their full payment by the tenth of the month.

17. Each month the Julians received their monthly statement indicating that their payment had been timely received and that no penalties had been assessed. There was no indication in the statements that the payments, having been made in many cases after the first of the month, but before the tenth of the month, were subjecting the Julians to more interest or that there would be additional payments required after they had made all the scheduled payments.

18. The Julians began making payments under the contract on October 1, 2005. Each month they made payment in full before the tenth of the month. From the "Late Charge"

contract language, the Julians understood that payments made after the due date and less than ten days late would incur no penalty.

19. At no point did CitiFinancial provide notice or explanation to the Julians that interest would be charged on payments made less than ten days late.  At no point did CitiFinancial indicate in the monthly billing statements mailed to the Julians the amount of additional interest charged due to payments made after the due date or that the total amount due on the loan would be increased by the added interest accrual.

20. Based on the above, the Julians regularly made payments in full after the first but before the tenth of the month when the penalty would be triggered.  The Julians were at no time made aware that this practice was adding to the total amount due on the loan.

21. The Julians were notified by a letter dated September 6, 2010 that Santander would be assuming the collection of the debt owed on the loan to CitiFinancial effective the same date.  The letter stated that CitiFinancial still owned the contract and that the transfer did not affect the terms of the contract.

22. After September 6, 2010, the Julians continued their regular payment practices submitting payment instead to Santander.

23. At no point did Santander provide notice or explanation to the Julians that interest would be charged on payments made less than ten days late.  At no point did Santander indicate in the monthly billing statements mailed to the Julians the amount of additional interest charged due to payments made after the due date or that the total amount due on the loan was increased by the added interest accrual.

24. After making their monthly payment on August 4, 2011 and shortly before the Julians made their seventy-second and final payment in September 2, 2011, a representative of

Santander contacted the Julians on the phone and informed them that an additional balance of $833.67 was due on the contract and as such the Julians would not satisfy their obligations under the contract by only paying the last payment of $459.82.

25. No notice was sent to the Julians telling them about the additional claimed amount before the final scheduled payment was due as the contract language said it would be.

26. The Julians paid the final payment of $459.82 on September 2, 2011.  They did not pay the additional claimed balance of $833.67 and informed Santander that they would not pay the amount because they did not owe any additional amount on the loan after their September 2, 2011 payment. The Julians did not understand where the additional claimed balance came from and no explanation was provided to them.

27. Representatives of Santander proceeded to call the Julians at their home on an almost daily basis demanding they make a payment for the claimed $833.67.  The Julians did not pay the amount and continued to dispute the amount to Santander. They refused to pay the disputed amount because they believed that they had timely made their 72 payments and because Santander did not provide any explanation as to how the additional amount was calculated.

28. Santander at no time provided the Julians with a written explanation of the claimed additional amount and how it was computed.  All communications regarding the claimed amount was oral as between the Julians and Santander and lacked sufficient explanation as to where the amount originated or how the amount was computed.

29. The Julians contacted an attorney to represent them in their dispute with Santander.  The attorney contacted Santander and informed Santander again that the amount claimed was being disputed by the Julians.  After this, the calls to the Julians stopped.

30. Sometime after speaking with the Julians' attorney, Santander reported the claimed amount to a credit reporting agency as an outstanding debt owed by the Julians. Santander did not report that the debt was disputed and the debt does not appear on the Julians' credit report as a disputed debt.

31. In the spring of 2012, the Julians again began receiving phone calls regarding the debt by an unidentified caller asking to verify the Julians' address and claiming that they had a judgment against the Julians for the claimed amount. The caller demanded payment of the $833.67.

32. After the Julians contacted an attorney it was discovered, that the on the back of the contract, the language of the contract states: "**How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due."

33. The Julians were not aware of this provision previously and understood and were led to believe, by the language on the front of the contract, that any payment received before the tenth of the month would be considered timely and would not be subject to additional charges.

## CONSTRUCTION OF APPLICABLE LAW

34. The FDCPA is a strict liability statute. <u>Russell v. Equifax A.R.S.</u>, 74 F.3d 30 (2d Cir. 1996). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." <u>Id</u>.; <u>see also</u>, <u>Clomon v. Jackson</u>, 988 F.2d 1314 (2d Cir. 1993).

35. The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor. <u>Sprinkle v. SB&C Ltd.</u>, 472 F. Supp.2d 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. <u>Weil v. Long Island Sav. Bank, FSB</u>, 77 F. Supp.2d 313 (E.D.N.Y. 1999). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. §§ 1601 *et seq*., is a remedial statute, it should be construed liberally in favor of the consumer." <u>Johnson v. Riddle</u>, 305 F.3d 1107 (10th Cir. 2002).

36. The FDCPA is to be interpreted in accordance with the "least sophisticated" consumer standard. <u>Savino v. Computer Credit, Inc.</u>, 164 3F.3d 81 (2d Cir. 1998); <u>Clomon</u>, 988 F.2d at 1318. The FDCPA was not "made for the protection of experts, but for the public – that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." <u>Charles of the Ritz Distributors Corp. v. Federal Trade Commission</u>, 143 F.2d 676 (2d Cir. 1944). The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even the naïve and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices. <u>Clomon</u>, 988 F.2d at 1318.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## COUNT I

37. Nowhere on the face of the contract does it state in a way clear to the least sophisticated consumer how interest will be computed on late payments or in relation to the late penalty incurred on payments made after the tenth of the month. The only stated consequence of making a late payment is that when payment is made ten or more days after the due date the Julians would incur a penalty. The absence of any statement informing the Julians that a penalty will be incurred on a payment more than ten days late *in addition to* interest that will be computed on payments made less than ten days after the due date lends the language of the contract to two contradictory, yet equally plausible, interpretations.

38. First, the language can be read to mean that the only consequence of making a payment late is to pay a penalty when the payment is ten or more days late.  Alternatively, the language can be read to mean that interest will accrue on the entire outstanding amount until the date of payment and in addition a penalty will be incurred for payments made more than ten days late.  The first interpretation is clear on the face of the contract, particularly to the least sophisticated consumer. The second interpretation requires reading the contract's "Late Charge" language along with the "Finance Charge and Payment" language on the back of the contract. Such an interpretation is beyond that expected of the least sophisticated consumer.

39. The lack of clarity in the contract's late payment language with regard to the absence of the accrual of interest on payments made between the due date and the date when penalties are incurred falls well below the applicable "least sophisticated consumer"

standard. The failure to meet the applicable standard combined with CitiFinancial's and Santander's failure to inform the Julians of the additional interest accrual or to enumerate the interest accrual in the monthly billing statements extinguished any possible right of the creditor to charge interest in that period of time. As such, the Julians did not owe the claimed amount of $833.67 to CitiFinancial or Santander.

40. Santander's actions in claiming that $833.67 in interest accrual was due on the loan in addition to the total amount due as stated in the original contract, where Santander had no right to charge the Julians the additional amount of accrued interest, violated Section 807(2)(A), 15 U.S.C. § 1692e(2)(A) as Santander knew that no such amount was due on the loan. This claim by Santander constituted a false representation of the amount of the debt.

41. Santander's actions in claiming that the Julians' obligations under the loan contract were not satisfied after making the seventy-second and final payment violated Section 807(2)(A), 15 U.S.C. § 1692e(2)(A) as Santander knew that the Julians had paid in full satisfying all of their obligations under the loan contract and were no longer legally liable to CitiFinancial for any amount. This claim by Santander constituted a false representation of the legal status of the debt.

## COUNT TWO

42. Plaintiff repeats and realleges those allegations contained in paragraph "1" through "38" as if more fully set forth hereinafter.

43. Santander used deceptive means in its attempt to collect the claimed $833.67 in violation of Section 807(10), 15 U.S.C. § 1692e(10) of the FDCPA in that it made a claim to the additional amount and attempted to collect payment for the same but at no time provided

the Julians with a written explanation or enumeration of the alleged additional charges, their origination or how they were calculated. Without this information, the Julians were unable to determine whether the alleged charges were legitimate or not.

44. According to the "Finance Charge and Payments" language in the contract, Santander was obligated to send the Julians notice of any amount owed in addition to the original total amount set forth in the contract before their final payment became due. Santander's failure to send such a notice at any time violated its obligations under the contract.

45. In failing to perform its contract obligation and persistently demanding payment on a wholly unsubstantiated additional amount Santander used deceptive means in attempting to collect a debt from the Julians.

## COUNT THREE

46. Plaintiff repeats and realleges those allegations contained in paragraph "1" through "42" as if more fully set forth hereinafter.

47. Santander engaged in a course of harassing phone calls to the Julians by phoning the Julians almost every night and demanding payment on the claimed amount that was both unsubstantiated to the Julians and that the Julians repeatedly disputed. As the debt was not owed by the Julians and Santander had been made aware of the same, the repeated and continuous phone calls to the Julians served no other purpose than to annoy, abuse and harass the Julians. This course of harassing phone calls violated Section 806(5), 15 U.S.C. § 1692d(2) of the FDCPA.

## COUNT FOUR

48. Plaintiff repeats and realleges those allegations contained in paragraph "1" through "44" as if more fully set forth hereinafter.

11

49. Santander placed telephone calls to the Julians seeking location information, claiming that they had a judgment against the Julians for the additional amount on the contract and demanding payment of the $833.67. The callers did not identify themselves to the Julians during this set of phone calls. By failing to meaningfully disclose its identity to the Julians during these phone calls, Santander violated Section 806(6), 15 U.S.C. § 1692d(5) of the FDCPA.

### COUNT FIVE

50. Plaintiff repeats and realleges those allegations contained in paragraph "1" through "46" as if more fully set forth hereinafter.

51. At the latest, Santander was made aware that the Julians were disputing the debt when the Julians' attorney spoke with Santander and informed it that the Julians' were disputing it. After this conversation with the Julians' attorney, Santander reported the debt to a credit reporting agency as an outstanding debt owed by the Julians. Santander did not inform the credit reporting agency that the debt was in dispute despite the fact that the same was known to it. This act violated Section 807(8), 15 U.S.C. §1692e(8) of the FDCPA.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs Frank and Cynthia Julian, pursuant to Section 813(a) of the FDCPA, 15 U.S.C. § 1692k(a), and the Court's own equitable powers, request that the Court:

A. Enter judgment against Santander and in favor of Plaintiffs for each violation alleged in this complaint;

B. Award Plaintiffs monetary civil penalties for each violation of the FDCPA pursuant to Section 813(a)(2)(A) of the FDCPA, 15 U.S.C. § 1692k(a)(2)(A);

C. Award Plaintiffs the costs of bringing this action, including attorney's fees, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: July 26, 2012

                                      James Edward Gross, Esq.
Law Office of James Edward Gross
Attorney for the Plaintiff
90 State Street, Suite 700
Albany, New York 12207
(518) 591-4643
Bar Roll No.: 510361